ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP100478

# EXHIBIT A

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF CHARLESTON | )<br>)<br>) | IN THE COURT OF COMMON PLEAS<br>FOR THE NINTH JUDICIAL CIRCUIT |
| Tabitha Eileen Britt, as the Personal<br>Representative of the Estate of James<br>Claude Britt, Jr., | )<br>)<br>)<br>) | Case No.: 2021-CP-10-_____ |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | **COMPLAINT**<br>(Jury Trial Demanded) |
| The County of Charleston, South<br>Carolina; David Abrams, in his Official<br>Capacity and his Individual Capacity;<br>Thomas "Chris" Esdorn, in his<br>Individual Capacity; Gregory "Greg"<br>Carney, in his Individual Capacity; and<br>David M. French, M.D., in his<br>Individual Capacity, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

COMES NOW Plaintiff Tabitha Eileen Britt, as the duly qualified and appointed Personal Representative of the Estate of James Claude Britt, Jr., by and through the undersigned legal counsel, complaining of the above-named Defendants, would allege and show unto this Honorable Court the following:

## INTRODUCTION

1.      The Federal Drug Administration (hereinafter "FDA") is responsible for protecting the public health.  Through a rigorous approval and regulatory process, the FDA that ensures American patients have access to the safest and most advanced pharmaceutical resources in the world.

2.      Further, since 1970 the United States has maintained the Controlled Substance Act in an effort to protect the general public from dangerous and/or addictive drugs by regulating the manufacture, import, distribution, possession, and use of certain, designated controlled substances.

1

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

3.      During the early and middle twentieth century, physicians were in search of an anesthetic which would ease the pain of surgeries and other pain management situations.  During this time chemists discovered phencyclidine (PCP) was an effective analgesic in animals and the Parke Davis Company eventually patented the drug in 1956.  PCP works as a dissociative anesthetic.

4.      Plaintiff is informed and believes however that during human clinical trials it was determined that PCP was not suitable for use in human patients because it caused patients to become severely agitated, delusional, and/or irrational.  Subsequent thereto Ketamine was discovered when research chemists merged ketone with an amine and later tested the drug's safety and efficacy on volunteer prisoners before approving Ketamine's limited use as a field anesthetic for soldiers during Vietnam.

5.      Subsequent thereto and at all times relevant herein Ketamine was approved by the FDA as a medication whose primary use was initiating and maintaining anesthesia in clinical settings.

6.      Further, at all times relevant hereto Ketamine was classified as a Class III controlled substance.  It is a nonbarbiturate dissociative anesthetic whose primary mechanism of action is due to antagonism of NMDA receptors in the central nervous system and that the anesthetic state produced by Ketamine is called "dissociative anesthesia" because Ketamine works by cutting off a person's conscious awareness of his or her body.

7.      Plaintiff is informed and believes since its approval and at all times relevant hereto there existed a generally accepted medical standard of care for the proper and safe use of Ketamine. And at all times relevant hereto, Ketamine was a highly regulated drug and as such could only be

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

administered or prescribed by licensed medical clinicians within the prevailing standard of medical care.

8.    Further, at all times relevant hereto the accepted medical standard of care for the proper and safe use of Ketamine included but was not limited to the following: assessing the patient's medical history, evaluating the drug's side effects, considering contraindications and obtaining patient consent.

9.    Plaintiff is informed and believes that at all times relevant hereto known side effects associated with Ketamine include bradycardia and hypotension in addition to respiratory and cardiac arrest.  Further, Ketamine is known to cause cardiopulmonary compromise as well as other catastrophic outcomes in people and as such is contraindicated under certain conditions.

10.    Plaintiff is informed and believes that at no time relevant hereto did the FDA ever test or approve Ketamine for use as a form of law enforcement restraint or any other non-medical and/or non-clinical use.

11.    Despite the foregoing and as will be demonstrated more fully, James Britt was lethally injected with Ketamine as a direct and proximate result of Defendants negligent, grossly negligent, reckless, willful and wanton acts and/or omissions, including the use of Ketamine for a law enforcement objective without medical need or justification.

12.    Decedent, James Britt, succumbed to his injuries and passed away on October 16, 2019.

## JURISDICTION AND VENUE

13.    The Decedent, James Britt, was a citizen and resident of Charleston County, State of South Carolina.  Plaintiff, Tabitha Britt, the widow of James Britt, is the duly appointed Personal Representative of the Decedent's Estate and has authority to bring all claims herein.  This wrongful

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

death action is made on behalf of Decedent's beneficiaries under the South Carolina Wrongful Death Act, S.C. Code § 15-51-10 et seq. And this survival action is made on behalf of the Decedent's Estate under S.C. Code § 15-5-90. Plaintiff's Certificate of Appointment is attached hereto. *See* Exhibit 1.

14.    The state-law claims in this action are brought pursuant to the South Carolina Tort Claims Act, S.C. Code Annotated § 15-78-10 through § 15-78-200, § 15-7-30(B), and the common laws of the State of South Carolina for liability existing outside the SCTCA. Pursuant to the SCTCA these claims are brought against the governmental agency and employer, not the individually named Defendants.

15.    The federal claims in this action are brought pursuant to 42 U.S.C. § 1983, the Civil Rights Act of 1871, which provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

16.    The above-named individuals set forth in the caption for this action are sued in their individual capacities unless stated otherwise. The persons additionally sued in their official capacities are designated as such. The official-capacity claims are made pursuant to *Monell* and its progeny.

17.    All acts and/or omissions giving rise to this action took place in Charleston County, South Carolina.

18.    Each defendant is either domiciled in Charleston County, a resident of Charleston County, or works in Charleston County.

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

19.     This Court has subject matter jurisdiction over the claims asserted herein, personal jurisdiction over the parties hereto, and venue is proper in the Ninth Circuit Court of Common Pleas, Charleston County.

## **FACTS**

20.     On September 30, 2019, a tire on Decedent's car blew out near the entrance of Snee Farm subdivision located in Mt. Pleasant, South Carolina. As a result, Decedent safely pulled his vehicle into the entrance of the private neighborhood and parked on a paved area so that he did not obstruct traffic or block other cars from coming and going.

21.     At approximately 7:14pm Officer Burgess with the Mt. Pleasant Police Department arrived at Decedent's location and offered to assist him in changing his tire.

22.     Officer Burgess initially began to help the Decedent locate the tools needed to change his tire.   Subsequent thereto, multiple additional MPPD police officers arrived at Decedent's location after which time Officer Burgess informs Decedent she is going to place him under arrest for public intoxication.

23.     In response, Decedent asked to see the officer's supervisor so that he could explain the situation and avoid being arrested and incarcerated.   Decedent told officers that he needed to be at work in the morning to provide for his family and that he wanted to call someone to come get his car instead of the police having it impounded.   The officers were not willing to grant this request.

24.     Moments later a supervisor from the MPPD arrived.   Upon arrival, he immediately initiated physical contact with Decedent in an effort to place him in handcuffs and take him into custody.

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

25.     Believing he was well within his rights to pull over on private property and change his flat tire Decedent questioned the authority of the police action physically and verbally.

26.     Subsequent thereto multiple police officers physically overwhelmed Decedent and took him to the ground where they forced Decedent onto his stomach and restrained him by placing him in handcuffs with his arms behind his back and by placing shackles on his legs.

27.     At this time, Decedent did not pose a danger or risk of harm to anyone due to his positioning and total restraints.

28.     After Decedent is restrained and held down in the prone position, he repeatedly requests the officers roll him over and to sit him up so he can breathe.

29.     Decedent repeatedly tells officers that he cannot breathe.  He says, "I can't breathe" more than a dozen times.

30.     Decedent is both visibly and audibly struggling to breathe.  Each breath he takes, and exhales sounds like a loud snore.  These sounds are known in the medical community as "rhonchi."  Rhonchi are a known indicator of respiratory distress.

31.     The Charleston County EMS unit, Medic 37, arrived at the scene at approximately 7:40pm.  The Charleston County Fire Department unit, Squad 504, arrived three minutes later.

32.     Defendant Esdorn and Defendant Carney are the two Charleston County EMS employees on Medic 37.

33.     Defendant Esdorn does not perform any medical evaluation of Decedent.

34.     Defendant Carney does not perform any medical evaluation of Decedent.

35.     Decedent continues to be held down by multiple police officers after EMS arrival. His face is still being pressed into the pavement.

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP100478

36.    Decedent is clearly and obviously struggling to breathe.  Decedent is making snoring sounds with each breath.  Those sounds are a known and obvious sign of a blocked or narrowed airway.

37.    Without doing any medical evaluation and without assessing whether a medical need exists whatsoever, Defendant Esdorn instructs Defendant Carney to get the Ketamine on hand in the EMS unit to sedate Decedent.

38.    At this time, MPPD officers are still holding James Britt down on the pavement. He is still handcuffed behind his back. He is still hog-tied in leg shackles.  Multiple police officers continue to press his face into the pavement and put weight on his back, legs, arms, and neck.

39.    Decedent is in clear respiratory distress.  Each breath is labored.  His chest heaves with his lungs struggling for air.  The Rhonchi and snoring sounds continue.

40.    Defendant Carney draws up the Ketamine solution into a syringe and brings it over to where Decedent is laying face-down, cuffed, and struggling to breathe.

41.    When Decedent sees that Defendant Carney is holding something in his hand, Decedent asks, "what is that?"

42.    Defendant Carney tells him it is something to make him "have a good time."

43.    Decedent immediately objects to Defendant Carney or Defendant Esdorn giving him any medicine or doing anything to him.  He repeatedly says, "no, no, no."

44.    Ignoring Decedent's objections and in disregard for the lack of consent, Defendant Carney plunges the needle into Decedent's arm and pushes the maximum allowable amount of the sedative, Ketamine, into Decedent's bloodstream.

45.    After the Defendant Carney injects him with the sedative, Decedent cries out, "I'm going to die!"

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

46.    Decedent repeats, "I can't breathe."  "I can't breathe."  "Roll me over.  I can't breathe."

47.    Within several minutes, the Ketamine takes effect.  And within several more minutes, Decedent stops breathing and his heart stops pumping.  The EMTs resuscitate Decedent in the ambulance, however James Britt never regained consciousness and ultimately died on October 16, 2019.

48.    The forensic pathologist from MUSC and the Charleston County Coroner ruled Decedent's death as a homicide.

<u>**FOR A FIRST CAUSE OF ACTION**</u>
**Excessive Use of Force**
**Pursuant to 42 U.S.C. § 1983**
**As to Defendant Carney, in his Individual Capacity**
**As to Defendant Esdorn, in his Individual Capacity**

49.    Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

50.    Plaintiff is informed and believes the delivery of emergency medical services in the State of South Carolina is regulated by the State pursuant to the Emergency Medical Services Act (hereinafter "EMSA") which is found in Title 44, Chapter 61 of the South Carolina Code of Laws.

51.    Plaintiff is informed and believes the EMSA sets forth standards, regulations, and licensing requirements for the delivery of emergency medical services within the State of South Carolina.

52.    Further, persons seeking EMT certification in the State of South Carolina are required to pass the National Registry of Emergency Medical Technicians examination for each level of certification desired and further must meet all requirements established by the EMSA.

53.     Plaintiff is informed and believes the EMTs are not authorized to perform any services not expressly authorized and/or permitted under the EMSA.

54.     More particularly, the EMSA prohibits use of controlled substances unless (1) the EMT is trained to provide advanced life support; (2) the EMT possesses a current DHEC certification; (3) the controlled substance is delivered to a patient for medical purposes; (4) the administration is given pursuant to a verbal or written order of a physician possessing a valid license to practice medicine in this State. (S.C. Code Ann. § 44-61-130)

55.     In addition to the EMSA, Plaintiff is informed and believes there existed at all times relevant hereto medical standards of care which governed the degree and quality of care required of these Defendants on the night of decedent's death.

56.     Plaintiff is informed and believes neither the EMSA nor the prevailing standards of professional care ever authorized these Defendants to administer a controlled substance to James Britt in violation of the EMSA or the prevailing standard of care.

57.     Further, Plaintiff is informed and believes these Defendants were not licensed to, authorized to, or allowed to administer a controlled substance to James Britt for any non-medical purpose.

58.     At all times relevant hereto, Defendant Carney and Defendant Esdorn were acting under the color of state law as EMTs or paramedics employed with Charleston County and working for Charleston County EMS on board a County-operated ambulance.

59.     Despite the foregoing, these Defendants violated the EMSA and the prevailing standards of care in a number of particulars including but not limited to:

    i.   Failing to conduct any form of medical assessment of James Britt prior to or after he was injected with Ketamine;

    ii.   Failing to assess Mr. Britt's airway, breathing and/or circulatory status;

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

iii.  Failing to perform any medical monitoring of Mr. Britt prior to or after injecting him with Ketamine;

iv.  Failing to establish a treatment plan related to a medical condition and

v.  Failing to consult a medical doctor prior to injecting Mr. Britt with Ketamine and

vi.  Injecting Mr. Britt with Ketamine against his will and without his consent.

60.     The foregoing negligent, grossly negligent, reckless, willful wanton acts and/or omissions demonstrate these Defendants use of Ketamine was for a non-medical purpose and in violation of the legal obligations owed to Mr. Britt and the constitutional rights belonging to him.

61.     Further, these Defendants did not use Ketamine to treat a medical condition or to transport Mr. Britt to the hospital for further treatment. Rather, these Defendants used Ketamine for police purposes, generally, and more particularly to effect his arrest and incarceration.

62.     Decedent was completely subdued at the time he was injected with Ketamine. Even though he posed no risk of harm to anyone, Defendant Carney and Defendant Esdorn intentionally and purposefully injected Decedent with the sedative to further subdue him. In doing so, the actions of Defendant Carney and Defendant Esdorn were an unlawful, unjustified, and unreasonable use of force.

63.     Plaintiff is informed and believes these Defendants knew or should have known injecting Mr. Britt with Ketamine posed a substantial risk of serious harm and demonstrated a conscious disregard for his constitutional rights, his health, and his safety. That is, these Defendants were deliberately indifferent to Decedent's right against the use of unreasonable force.

64.     As such, Defendants' use of Ketamine constituted an unreasonable and unconstitutional use of force and seizure against Decedent, which directly and proximately caused

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

the deprivation of his right to be free from the use of excessive force as guaranteed by the Fourth Amendment and incorporated as to the states through the Fourteenth Amendment.

65.     As a direct and proximate result of Defendants Carney and Esdorn's unlawful use of force Decedent James Britt suffered serious and catastrophic bodily injuries resulting in his tragic and preventable death.

**FOR A SECOND CAUSE OF ACTION**
**Procedural and Substantive Due Process Violations of the Right to Bodily Integrity**
**Pursuant to 42 U.S.C. § 1983**
**As to Defendant Carney, in his Individual Capacity**
**As to Defendant Esdorn, in his Individual Capacity**

66.     Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

67.     The constitutional rights actionable pursuant to 42 U.S.C. § 1983 include a Fourteenth Amendment substantive due process right against state action conduct that deprives an individual of bodily integrity.

68.     The right to be free from state-occasioned damage to a person's bodily integrity is a clearly established right that additionally flows from the fundamental liberty of the individual as an American.

69.     The right to be free from unwanted physical contact has been recognized by the Supreme Court: "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pacific Railway Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1890).

70.     The right to be free of unwanted physical invasions has been recognized as an integral part of the individual's constitutional freedoms, whether termed a liberty interest protected

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

by the Due Process Clause or an aspect of the right to privacy afforded within the notions of personal freedom underlying the Bill of Rights.

71.     The right to refuse medical treatment has been specifically recognized as a right protected by the constitution and is clearly established.

72.     Defendant Carney and Defendant Esdorn, jointly and severally, acting together in concert, sedated Decedent with Ketamine against his express will.

73.     The purpose of the sedation was not medical in nature.  Rather, the purpose of the sedation was a law enforcement action to affect a seizure and assist in the arrest of Decedent.

74.     Defendant Carney and Defendant Esdorn subjected Decedent to a powerful and dangerous controlled substance without a medical purpose or justification.  Such actions were conducted with deliberate indifference for Decedent's fundamental right to personal liberty and bodily integrity.

75.     The use of Ketamine to sedate an arrestee without medical purpose or justification shocks the conscience and violates all fundamental principles of American liberty.

76.     Under the facts of this case, the use of Ketamine by Defendant Carney and Defendant Esdorn constitutes a violation of Decedent's Fourteenth Amendment right to bodily integrity.

77.     The manner of violation by Defendant Carney and Defendant Esdorn lacked any observance of procedural due process as more particularly described above herein.

<u>FOR A THIRD CAUSE OF ACTION</u>
**Bystander Liability**
**Pursuant to 42 U.S.C. § 1983**
**As to Defendant Esdorn, in his Individual Capacity**

78.     Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

79.     Plaintiff pleads this cause of action in the alternative should Defendant Esdorn deny ordering the sedative to be given to James Britt or deny any direct involvement in the actions leading to James Britt's death.    Plaintiff believes Defendant Esdorn cannot deny direct involvement with any reasonable reliability but submits this cause of action in the alternative.

80.     Defendant Esdorn, as a government official and state actor, had a duty to uphold the law and protect the public, and more specifically Decedent, from illegal acts and constitutional violations.

81.     Defendant Esdorn knew Defendant Carney was violating Decedent's constitutional rights of bodily integrity and freedom from excessive force.

82.     Defendant Esdorn had a reasonable opportunity to prevent the harm as he was directly positioned next to Decedent at the time his rights were violated.

83.     Despite Defendant Esdorn's knowledge and opportunity, he chose not to act to protect Decedent from the impending constitutional violations.

**FOR A FOURTH CAUSE OF ACTION**
**Supervisory Liability**
**Pursuant to 42 U.S.C. § 1983**
**As to Defendant Esdorn, in his Individual Capacity**

84.     Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

85.     Plaintiff believes Defendant Carney and Defendant Esdorn acted jointly and severally in concert to violate Decedent's constitutional rights as set forth above.

86.     In the alternative, Plaintiff believes Defendant Esdorn is the supervisor of Defendant Carney during all times relevant herein.

87.     As Defendant Carney's supervisor and the ranking medic, Defendant Esdorn directed Defendant Carney to sedate Decedent with Ketamine.

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

88.     Should Defendant Esdorn deny he ordered Defendant Carney to sedate Decedent with Ketamine, even though captured on audio and video recording, Plaintiff asserts and alleges in the alternative that Defendant Esdorn had actual knowledge of Defendant Carney's violation of Decedent's constitutional rights and Defendant Esdorn acquiesced in that violation.

### FOR A FIFTH CAUSE OF ACTION
**Supervisory Liability**
**Pursuant to 42 U.S.C. § 1983**
**As to Defendant David Abram, in his Individual Capacity**
**As to Defendant David French, MD, in his Individual Capacity**

89.     Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

90.     David Abrams, at all relevant times herein, was the Director of Emergency Medical Services for Charleston County.  Upon information and believe, Defendant Abrams resides within Charleston County, South Carolina.  As the head of this department, Defendant Abrams, upon information and believe, set policy and established standard operating procedures for Charleston County Emergency Medical Services.

91.     David French, M.D., at all relevant times herein, was employed as the Medical Director for Charleston County EMS.  Defendant French is an emergency medical physician practicing emergency medicine with the Medical University of South Carolina.  At the time of Decedent's death, Defendant French was the statutorily mandated physician overseeing the operation of emergency medical services within Charleston County.  Upon information and belief, Defendant French set policy and established standard operating procedures for medical-related tasks, including the use of Ketamine and associated protocols.

92.     Defendant Abrams and/or Defendant French, acting jointly and severally, established and maintained a policy, practice, and/or custom which directly caused the violation of Decedent's constitutional rights herein.

93.     The policy, practice, and/or custom was enacted and maintained with deliberate indifference to the consequences thereof and the foreseeable violations of constitutional protections.

94.     The policy, practice, and/or custom authorized and encouraged the use of Ketamine to sedate individuals for non-medical purposes and without medical justification whereby CCEMS would use Ketamine to assist in the arrest and seizure of individuals.

95.     Defendant Carney and Defendant Esdorn were acting in accordance with the policy, practice, and custom established by Defendant Abrams and/or Defendant French and with the approval and sanction of these policy directives.

96.     The policy, practice, and/or custom established by Defendant Abrams and/or Defendant French created an unreasonable risk of excessive force in violation of the Fourth Amendment and invasion of bodily integrity in violation of the Fourteenth Amendment.

97.     Defendant Abrams and/or Defendant French were aware the policy, practice, and/or custom created such unreasonable risk and that the unreasonable risk of constitutional violations existed at all relevant times herein.

98.     Despite the knowledge of this unreasonable risk, Defendant Abrams and/or Defendant French were deliberately indifferent to that risk, maintained the existing policy, and encouraged the use of Ketamine in law enforcement settings without medical need or justification.

99.     The unconstitutional use of Ketamine in this case by Defendant Carney and Defendant Esdorn was the direct and proximate result of the failures of Defendant Abrams and

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

Defendant French to adopt, implement, and enforce a sedation policy that would prohibit the use of Ketamine for law enforcement purpose rather than medical purpose.

100.    The policy, practice, and/or custom adopted by Defendant Abrams and/or Defendant French was the direct and proximate cause of Decedent's injuries and constitutional infringements.

101.    In addition, and in the alternative, Defendant Abrams and Defendant French acquiesced to the use of Ketamine sedation in law enforcement settings without actual medical need or justification and that acquiescence was the direct and proximate cause of Decedent's injuries as set forth herein.

102.    In addition, and in the alternative, Defendant Abrams and Defendant French failed to train the CCEMS paramedics and EMTs regarding the constitutional limits of sedation and chemical restraint demonstrating a deliberate indifference to the constitutional rights of those whom the CCEMS employees may come into contact.  Such failure to train was the direct and proximate cause of Decedent's injuries as set forth herein.

### FOR A SIXTH CAUSE OF ACTION
**_Monell_ Liability & Official Capacity Liability**
**Pursuant to 42 U.S.C. § 1983**
**As to The County of Charleston, South Carolina**
**As to Defendant David Abram, in his Official Capacity**
**As to Defendant David French, MD, in his Official Capacity**

103.    Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

104.    The County of Charleston, South Carolina, upon information and belief, maintains policies and procedures relating to the use of sedatives and/or Ketamine.

105.    During the times relevant herein, the policies and procedures of the Charleston County EMS Department were set by the Director of EMS, David Abrams.

106.     The policies and procedures directly related to the application or implementation of a controlled substance, medication, narcotic, or anesthetic were developed under the direction of the Medical Director for EMS, David French, MD.

107.     The policies and procedures for use of Ketamine or other sedatives unconstitutionally allowed and directed Charleston County EMTs and/or paramedics to administer Ketamine for non-medical purposes.

108.     More specifically, the policies and procedures relative to Ketamine allowed to its use in a law enforcement objective.

109.     Upon information and belief, the policies and procedures relative to Ketamine directed and mandated its use against agitated County residents and/or visitors even when not medically necessary and implemented for a policing objective.

110.     The policies and procedures governing and directing the conduct of Charleston County EMTs were the driving force behind Defendant Carney's and Defendant Esdorn's actions in this matter.

111.     Alternatively, Charleston County has a custom, pattern, and/or practice such that it is the functional equivalent of an express policy directing use of Ketamine against agitated persons in a law enforcement setting without medical need or justification.

112.     Upon information and belief, Ketamine has been used against residents and visitors of Charleston County without medical need or justification during interactions with law enforcement officials.

113.     Upon information and belief, the unconstitutional use of Ketamine is not an isolated incident in this matter but rather the use of Ketamine to affect a law enforcement purpose was pervasive and widespread.

17

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

114.    Alternatively, Charleston County's failure to implement procedural safeguards to prevent the unconstitutional use of Ketamine was a policy of inaction.

115.    Charleston County, through its officials, was deliberately indifferent to the constitutional violations as set forth in Plaintiff's Complaint.

116.    Charleston County knew or reasonably should have known that there was a substantial risk that Ketamine would be used against people that were merely agitated or upset when being arrested or interacting with law enforcement.

117.    However, the policy and procedure governing the use of Ketamine fails to limit its application to cases of medical need despite the known risk of constitutional violations and actual knowledge of Ketamine's use for non-medical purposes.

118.    Upon information and belief, the policies and procedures regarding the use of Ketamine were a deliberate choice by Charleston County's policymaker(s) and medical director(s).

119.    Charleston County chose to implement the use of Ketamine instead of what was the previously existing policy using non-anesthetic medications to calm agitated patients. Ketamine and the policies governing its application were chosen from among various alternatives by officials and policymakers at Charleston County.

120.    The policy directives of Charleston County, Defendant Abrams as the Director of EMS, and Defendant David French, MD as the Medical Director of EMS were a direct and proximate cause of the constitutional violations and injuries suffered by Decedent in this case.

121.    Charleston County, David Abrams, and David French, MD, are jointly and severally liable for the constitutional violations suffered by Decedent in this case.

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

## FOR A SEVENTH CAUSE OF ACTION
### Negligence and Gross Negligence
### Pursuant to South Carolina Tort Claims Act
### As to The County of Charleston, South Carolina

122.    Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

123.    At all times relevant herein, Defendant Charleston County, by and through its employees and agents, had a duty to exercise reasonable care in all aspects relating to the administration of controlled substances, including Ketamine, in the performance of emergency medical services.

124.    Defendant breached this duty by sedating Decedent with Ketamine for the above-described law enforcement purpose, without medical need or justification, and without Decedent's consent and against his express wishes.

125.    Defendant used a dangerous sedative by non-medical persons for non-medical reasons as set forth herein.

126.    Defendant's breach was a direct and proximate cause of Decedent's injuries and ultimate death.

127.    Defendant breached its duty to Decedent by and through multiple separate and independent occurrences to be proven at trial and decided by the jury in this action.

## FOR AN EIGHTH CAUSE OF ACTION
### Negligent Supervision, Negligent Training, Negligent Retention
### Pursuant to South Carolina Tort Claims Act
### As to The County of Charleston, South Carolina

128.    Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

129.    Upon information and belief, the County of Charleston, South Carolina owed statutory and common law duties to the public at large, and to Decedent in particular, to refrain from negligently supervising, training, and/or retaining employees.

130.    Upon information and belief, Defendant Charleston County knew or reasonably should have known that Defendants Carney and Esdorn did not have the proper training, education, and/or temperament meet generally accepted standards to the detriment of the public.

131.    Defendant Charleston County knew or should have known that their failure to provide adequate training to and supervision of its EMS employees on proper procedures for using sedatives and more specifically Ketamine.

132.    Defendant Charleston County knew or should have known that Ketamine and other sedative drugs should not serve a law enforcement agenda.

133.    Defendant Charleston County knew or should have known that Ketamine and other sedative drugs should only be considered when medically necessary and appropriate.

134.    Defendant Charleston County failed to reasonably and properly train and implement policies and procedures as to appropriately limit the scope of sedation and chemical restrain to medical needs only.

135.    As a direct, foreseeable and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Defendant Charleston County, Decedent James Britt suffered conscious physical harm and injury, and endured pain and suffering, including mental distress, emotional anguish, and death.

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

**FOR A NINTH CAUSE OF ACTION**
**Death by Wrongful Act**
**Pursuant to S.C. Code Ann. § 15-51-10, et. seq.**
**As to All Defendants**

136.    Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

137.    As a result of the above-referenced acts and/or omissions, Decedent James Britt suffered conscious pain and suffering, personal injuries, and trauma prior to his death.

138.    Pursuant to the South Carolina Wrongful Death Act, Plaintiff alleges entitlement to all of the above-referenced and foregoing causes of action as survivors and/or as the duly appointed Personal Representative of the Estate of James Britt, Jr.

139.    As a direct and proximate result of Defendants' acts as set out above, the Decedent's beneficiaries, as represented by Tabitha Britt, Personal Representative of the Estate of James Britt, have suffered injuries, which have caused, and in the future will cause, the beneficiaries to suffer one or more of the following elements of damage as to the wrongful death claims:

    a)  Pecuniary loss;

    b)  Conscious pain and suffering;

    c)  Mental shock and suffering;

    d)  Wounded feelings;

    e)  Grief and sorrow;

    f)  Loss of companionship; and

    g)  Deprivation of use and comfort of Decedent's society, including loss of his experience, knowledge, and judgment in managing the affairs of himself and his beneficiaries.

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

140.    Due to the intentional, deliberately indifferent, willful, wanton, reckless, grossly negligent, and negligent acts of Defendants as set out above, as well as violations of the guarantees of the Fourth Amendment and Fourteenth Amendment to the United States Constitution, Plaintiff is entitled to compensation for funeral expenses and other compensatory damages and is entitled to punitive damages in an amount to be determined by a jury.

### FOR A TENTH CAUSE OF ACTION
**Survival Action**
**Pursuant to S.C. Code Ann. § 15-5-90, et. seq.**
**As to All Defendants**

141.    Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

142.    As a result of the above referenced acts and/or omissions, Decedent sustained serious injuries ultimately causing his wrongful death.

143.    Pursuant to the South Carolina Survival Act, Plaintiff is entitled to bring all of the above-referenced and foregoing causes of action as the duly appointed Personal Representative of the Estate of James C. Britt, Jr.

144.    Plaintiff alleges that as a result of the above referenced acts, Decedent suffered conscious pain and suffering, personal injuries and trauma prior to his death.  Plaintiff is entitled to all compensatory damages allowed by law and is entitled to punitive damages in an amount to be determined by a jury.

145.    All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of South Carolina, and Defendants' Constitutional obligations and duties to Decedent.

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

146.    Each of the above-described acts and/or omissions and/or commissions directly and proximately caused Decedent's injuries, physical pain and suffering, emotional and mental trauma, and other aspects of compensatory damages endured before Decedent succumbed to his injuries.

147.    Consequently, Plaintiff seeks actual and punitive damages and such other and further relief this Honorable Court deems just and proper.

## FOR AN ELEVENTH CAUSE OF ACTION
### Punitive Damages
### As to Defendant Carney, Defendant Esdorn, Defendant Abrams, & Defendant French
### In Each Defendants' Separate, Individual Capacity

148.    Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

149.    Defendants' separate and independent, intentional, willful, and malicious actions, were done with conscious disregard and deliberate indifference for the rights afforded to Decedent. Additionally, each Defendant acted with reckless disregard for the constitutional protections afforded to Decedent.

150.    Plaintiff is entitled to an award of punitive damages against each individually named Defendant in an amount to be determined by the jury in this action.

## FOR AN TWELFTH CAUSE OF ACTION
### Attorney Fees and Costs of Litigation
### Pursuant to 42 U.S.C. § 1988
### As to Defendants Pursuant to 42 U.S.C. § 1983

151.    Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

152.    Pursuant to 42 U.S.C. § 1988, Plaintiff seeks an award of reasonable attorney fees and costs of litigation in an amount to be determined by the Court at the conclusion of this matter.

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

**FOR A THIRTEENTH CAUSE OF ACTION**
**Injunctive Relief**
**Pursuant to 42 U.S.C. § 1983 and Common Law**
**As to The County of Charleston, South Carolina and Its Employees**

153.    Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

154.    The policy, practice, and/or custom adopted by CCEMS allowing Ketamine sedation for a law enforcement objective and without medical need or justification violates the Fourth and Fourteenth Amendments to the United States Constitution.

155.    As the policy is clearly unconstitutional, Charleston County must be enjoined from using Ketamine in the law enforcement context until such time as Charleston County ceases the use of Ketamine and/or implements material changes to policy, procedure, and custom that will prevent the unconstitutional use of sedation going forward.

**DAMAGES**
**As allowed by the Statutory and Common Law of South Carolina**
**As allowed by the Statutory Law of the United States**
**To be Decided by the Jury**

156.    Plaintiff restates and incorporates by reference each of the above paragraphs as if fully set forth herein.

157.    Plaintiff seeks all compensatory damages allowable under the laws of the State of South Carolina and the United States for the personal physical injuries sustained by Decedent, including economic and non-economic harms both past and future.  The damages suffered by Plaintiff and Decedent include lost earning capacity, medical expenses, pain and suffering, loss of consortium, loss of companionship, grief, sorrow, loss of enjoyment of life, and other harms to be proven at the trial of this case.

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a trial by jury and for the following:

i.      Judgment against Defendants, individually and joint and severally;

ii.     For actual damages, special damages, consequential damages, and treble damages in an amount to be determined by the jury;

iii.    For punitive damages, to be assessed individually and separately against each Defendant named in his Individual Capacity, in an amount to be determined by the jury;

iv.     For all allowable costs of this action and reasonable attorney's fees pursuant to 42 U.S.C. § 1988, et. seq.;

v.      For injunctive relief restraining use of Ketamine for law enforcement purposes;

vi.     And for all such other and further relief this Honorable Court deems just and proper.

Respectfully submitted,

**McLEOD LAW GROUP, LLC**

BY:  s/ W. Mullins McLeod, Jr.
W. Mullins McLeod, Jr., Bar No. 14148
Michael Thomas Cooper, Bar No. 100053
P.O. Box 21624
Charleston, SC 29413
843-277-6655

and

J. Kevin Holmes, Esq., Bar No. 2578
Steinberg Law Firm, LLP
61 Broad Street
Charleston, SC 29401
843-376-5896

*Attorneys for Plaintiff*

October 15, 2021
Charleston, South Carolina

ELECTRONICALLY FILED - 2021 Oct 15 3:04 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

STATE OF SOUTH CAROLINA ) IN THE PROBATE COURT

COUNTY OF CHARLESTON ) **CERTIFICATE OF APPOINTMENT**

IN THE MATTER OF: ) CASE NUMBER: 2019ES1002185
JAMES CLAUDE BRITT, JR. )
(Decedent) )

This is to certify that

TABITHA EILEEN BRITT

is/are the duly qualified

☒ PERSONAL REPRESENTATIVE
☐ SUCCESSOR PERSONAL REPRESENTATIVE
☐ SPECIAL ADMINISTRATOR

in the above matter and that this appointment, having been executed on the 23rd day of December, 2019, is in full force and effect.

**RESTRICTIONS:**

Executed this 23rd day of December, 2019.

_____
Irvin G. Condon, Probate Court Judge
BY ESTATE CLERK

**Do not accept a copy of this certificate without
the raised seal of the Probate Court.**

FORM #141ES (1/2014)
62-1-305, 62-3-103

ELECTRONICALLY FILED - 2021 Oct 15 3:57 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| | ) | |
| Tabitha Eileen Britt, as the Personal | ) | Case No.: 2021-CP-10-04778 |
| Representative of the Estate of James | ) | |
| Claude Britt, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **SUMMONS** |
| v. | ) | (Jury Trial Demanded) |
| | ) | |
| The County of Charleston, South | ) | |
| Carolina; David Abrams, in his Official | ) | |
| Capacity and his Individual Capacity; | ) | |
| Thomas "Chris" Esdorn, in his | ) | |
| Individual Capacity; Gregory "Greg" | ) | |
| Carney, in his Individual Capacity; and | ) | |
| David M. French, M.D., in his | ) | |
| Individual Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

TO:     THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED AND REQUIRED to Answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer on the subscribers at their office located at 3 Morris Street, Suite A, Post Office Box 21624, Charleston, South Carolina, 29413, within thirty (30) days of the service, exclusive of the day of such service; and if you fail to answer the Complaint within this time, the Plaintiff will move for entry of Default Judgment and apply to the Court for the relief sought therein.

**McLEOD LAW GROUP, LLC**

BY:  s/ W. Mullins McLeod, Jr.
W. Mullins McLeod, Jr., Bar No. 14148
Michael Thomas Cooper, Bar No. 100053
P.O. Box 21624
Charleston, SC 29413
843-277-6655

and

J. Kevin Holmes, Esq., Bar No. 2578
Steinberg Law Firm, LLP
61 Broad Street
Charleston, SC 29401
843-376-5896

*Attorneys for Plaintiff*

October 15, 2021
Charleston, South Carolina

ELECTRONICALLY FILED - 2021 Oct 15 3:57 PM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004778